IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00904–EWN–BNB

DOUGLAS L. PINTAR,

      Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY, a foreign corporation,

      Defendant.

---

### ORDER AND MEMORANDUM OF DECISION

---

      This is an Employee Retirement Income Security Act ("ERISA") case.  Plaintiff Douglas Pintar alleges that Defendant Liberty Life Assurance Company improperly denied him disability benefits in violation of a certain section of the ERISA statute, 29 U.S.C.S. § 1132(a)(1)(B) (2007).  This matter is before the court on "Plaintiff's Motion to Reopen Litigation Following Remand" and "Plaintiff's Motion for Summary Judgment Following Remand," both filed September 8, 2006.  Jurisdiction is premised upon 29 U.S.C.S. § 1132 (2007) and 28 U.S.C.S. § 1331 (2007).

-1-

**FACTS**

*1.      Factual Background*

Defendant is the ERISA plan administrator and an insurer of Minolta-QMS, Inc.

("QMS").  (Order and Mem. of Decision at 2 [filed Aug. 4, 2005] [hereinafter "Order"].)  From

June 12, 2000 until July 2, 2001, Plaintiff worked for QMS as a computer software engineer.

(*Id.*)  In his work for QMS, Plaintiff developed and implemented software and algorithms related

to color matching, separations, calibration, halftoning, and resolution enhancement techniques for

QMS's color laser printers.  (*Id.*)  In order to perform his job, Plaintiff needed to be able to sit for

eight hours per day and lift ten pounds or less ten times per day.  (*Id.*)

As a QMS employee, Plaintiff was eligible to receive disability income benefits in

accordance with the terms and conditions of Defendant's group disability income policy (the

"Policy") with QMS.  (*Id.*)  The Policy dictates that a person is disabled from performing his  own

occupation if he is "unable to perform all of the material and substantial duties of his occupation

on an [a]ctive [e]mployment basis because of an [i]njury or [s]ickness." (*Id.*)  Additionally, the

Policy states that: (1) "[p]roof of continued [d]isability or [p]artial [d]isability, when applicable,

and regular attendance of a [p]hysician must be given to [Defendant] within [thirty] days of the

request for the proof;" and (2) Defendant, "at its own expense, will have the right and opportunity

to have [an insured], whose [i]njury or [s]ickness is the basis of a claim, examined by a [p]hysician

or vocational expert of its choice."[1]  (*Id.* at 2–3.)

_____

        [1]As the court has previously noted, other than the foregoing, neither party has identified
language in the policy regarding the extent to which the insured is required to provide medical

On February 11, 2000, Plaintiff was injured when a speaker cabinet fell on his foot at a party.  (*Id.* at 3.)  On March 8, 2001, Plaintiff first visited John Jachimiak, M.D. regarding his foot injury.  (*Id.*)  On April 27, 2001, Dr. Jachimiak performed corrective surgery on Plaintiff's left foot.  (*Id.*)  On July 2, 2001, Plaintiff stopped working at QMS.  (*Id.*)  On July 6, 2001, Dr. Jachimiak prescribed Plaintiff with Vicoprofen, a narcotic painkiller.  (*Id.* at 358, 373.)  In July 2001, Plaintiff applied for long-term disability benefits from Defendant.  (*Id.* at 371, 374.)

In October 2001, Dr. Jachimiak opined that Plaintiff could return to work on a modified duty position on November 15, 2001, and a regular duty position on December 1, 2001.  (*Id.*) Around the same time, Dr. Jachimiak stated:

> [i]t is my guess . . . that we're probably still a month away before he's going to be able to . . . start to return to work.  We refilled the Vicoprofen for him at this time and I do not see how he can go back to work until he's off the narcotics.

(*Id.*)  On November 15, 2001, Defendant approved Plaintiff for long-term disability benefits effective July 3, 2001 with payments beginning on October 1, 2001.  (*Id.* at 4.)  On November 27, 2001, Dr. Jachimiak opined that Plaintiff could return to work on December 24, 2001.  (*Id.*)

While Plaintiff was recovering from his foot problem, he sustained a partial tear of his left rotator cuff.  (*Id.*)  On December 21, 2001, Drigan D. Wieder, M.D. performed corrective surgery on Plaintiff's rotator cuff.  (*Id.*)  Dr. Wieder opined that Plaintiff could not engage in lifting, pushing, or pulling for twelve weeks after the surgery.  (*Id.*)  On February 13, 2002, Dr.

---

records and the extent to which, if any, Defendant may independently investigate claims.  (Order at 2.)

Jachimiak completed a form for Defendant, in which he stated that Plaintiff had no limitations or restrictions from December 24, 2001 to January 22, 2002.  (*Id.*)

On February 22, 2002, Gerald Rupp, M.D. completed a medical restriction form for Defendant, in which he noted that Plaintiff was to undergo corrective surgery for carpal tunnel syndrome.  (*Id.*)  Dr. Rupp opined that after the surgery, Plaintiff would have no use or limited use of his right arm for eight weeks.  (*Id.*)  On March 11, 2002, Plaintiff stated in a questionnaire from Defendant that the painkillers made him "sluggish" and he had been experiencing memory and concentration problems.  (*Id.*)

On May 10, 2002, James G. Reid, M.D., performed surgery on Plaintiff to treat his carpal tunnel syndrome.  (*Id.*)  On May 20, 2002, Dr. Reid noted that Plaintiff was "doing well" and was "actually quite high functioning."  (*Id.*)  Dr. Reid refilled Plaintiff's Vicoprofen prescription and asked Plaintiff "to avoid heavy lifting, pulling, pushing, or grabbing activities" for one month.  (*Id.* at 5.)  During May and June 2002, Plaintiff saw Dr. Jachimiak on three occasions for pain treatment.  (*Id.*)  On June 7, 2002, Dr. Jachimiak announced that Plaintiff "[would] be scheduled for chronic pain management."  (*Id.*)

In a letter dated July 9, 2002, Defendant informed Plaintiff that it had determined that Plaintiff was no longer disabled from his own occupation and was therefore discontinuing benefits effective July 12, 2002.  (*Id.*)  Defendant explained that: (1) Plaintiff could request a review of Defendant's decision in sixty days; and (2) any request should be in writing and should "include

documentation such as test results or any medical information which . . . [Plaintiff felt would]

support [his] claim." (*Id.*)

On July 19, 2002, Plaintiff appealed Defendant's denial of benefits. (*Id.*) Plaintiff stated

that the pain medications he took "affect[ed] [his] ability to concentrate and remember details,"

making it impossible for him to perform his job. (*Id.* at 5–6.) Plaintiff notified Defendant that

without "a non-narcotic solution to managing [his] pain," his condition could "persist for some

time to come." (*Id.*) Plaintiff did not attach any medical records to his appeal in support of these

statements. (*Id.* at 6.) On September 3, 2002, Defendant referred Plaintiff's appeal to David

Dickison, D.O. for his review. (*Id.*) Neither Defendant nor Dr. Dickison requested or reviewed

any medical documentation after July 15, 2002 from Plaintiff or his physicians. (*Id.*) On

September 12, 2002, Dr. Dickison reported to Defendant that Plaintiff was not impaired in

sedentary or light activities. (*Id.*) Although Dr. Dickison did mention Plaintiff's reports of pain,

he did not discuss whether Plaintiff's use of narcotic pain medication affected his mental

functioning capacity. (*Id.*) On September 20, 2002, Defendant affirmed its denial of benefits,

reasoning that Plaintiff failed to provide documentation that he was "reporting problems to [his]

physicians or that [the medications were] causing [him] problems or preventing a return to work

in [his] occupation." (*Id.*)

On October 9, 2002, Dr. Jachimiak stated that Plaintiff's "use of narcotics is preventing

him from mentally being able to perform his regular duties. Until these lower extremity issues are

cleared up, it would seem that he is disabled from his regular job." (*Id.*)

On January 20, 2003, Dr. Simons opined that Plaintiff's

> [l]ack of sleep and poor pain control and a need for opiate class
> medication all make it difficult for him to concentrate and perform
> the functions of a programmer.  He is unable to retain details
> sufficient to perform programming. . . . At the present time
> [Plaintiff] is totally disabled from working as a programmer.

(*Id.*)

## 2.      *Procedural History*

### a.      *Prior Proceedings*

On May 3, 2004, Plaintiff filed a complaint in this court, seeking: (1) judicial

determination of his rights under the Policy; (2) judicial declaration that Defendant violated

ERISA by denying his claim for benefits; and (3) monetary damages, including payment of

benefits, attorney fees and costs, and prejudgment and postjudgment interest.  (Pl.'s Compl. for

Declaratory Relief and Damages and Jury Demand [filed May 3, 2004].)

On July 23, 2004, Plaintiff filed an initial motion for partial summary judgment.  (Pl.'s

Mot. for Partial Summ. J.: Burden of Proof, Standard of Review, Admis. of Additional Evidence

and Scope of Disc. [filed July 23, 2004].)  On September 8, 2004, Plaintiff filed an amended

motion in the aftermath of Tenth Circuit's decision in *Fought v. Unum Life Insurance Co. of

America*, 379 F.3d 997 (10th Cir. 2004).  (Pl.'s Revised Mot. for Partial Summ. J.: Burden of

Proof, Standard of Review, Admis. of Additional Evidence and Scope of Disc. [filed Sept. 8,

2004].)  On August 4, 2005, this court granted Plaintiff's amended motion.  (Order.)  The court

reasoned that Defendant's denial of benefits was arbitrary and capricious because Defendant failed

to obtain information concerning the effects of Plaintiff's narcotic medication on his mental

capacity to perform his occupation.  (*Id.* at 15.)  The court closed Plaintiff's case and remanded it

to Defendant for reconsideration.  (*Id.* at 16.)

Following the court's remand, Jack Denver, M.D. performed a comprehensive review of

Plaintiff's medical records at Defendant's behest.  (Pl.'s mot. for Summ. J. Following Remand,

Statement of Undisputed Material Facts ¶ 5 [filed Sept. 8, 2006] [hereinafter "Pl.'s Br."];

*admitted in relevant part at* Def.'s Resp. to Pl.'s Mot. for Summ. J. Following Remand, Resp. to

Statement of Undisputed Material Facts ¶ 5 [filed Oct. 9, 2006] [hereinafter "Def.'s Resp."].)  On

December 26, 2005, Dr. Denver furnished a report concerning his comprehensive review.  (*Id.*,

Ex. C at 1–20 [Report].)  On January 23, 2006, Dr. Denver submitted an addendum to his report

based on his review of Plaintiff's prescriptions.  (*Id.*, Ex. C at 20–22 [Report].)  Dr. Denver

concluded that Plaintiff was unable to perform his occupation as a computer software engineer

from April 30, 2002 through June 5, 2003.  (*Id.*, Ex. C at 16–17, 21 [Report].)  On January 26,

2006, Defendant approved and reinstated Plaintiff's long-term disability benefits for the period

from July 2002 through June 30, 2003.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 8;

*admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)  In January 2006

and May 2006, Defendant made two payments to Plaintiff totaling $56,421.90 — the maximum

benefit for the period.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 8a, 8d; *admitted at* Def.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 8a, 8d.)

On January 26, 2006, Defendant notified Plaintiff that it would not pay benefits from July 1, 2003 forward. (*Id.*, Statement of Undisputed Material Facts ¶ 9; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.) On April 13, 2006, Defendant wrote Plaintiff a letter affirming its denial of benefits after July 1, 2003 and closing Plaintiff's case. (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.) On June 8, 2006, Plaintiff appealed Defendant's denial. (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.) On August 24, 2006, Defendant re-affirmed its denial of benefits. (*Id.*, Statement of Undisputed Material Facts ¶ 19; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 19.) Defendant based its affirmation largely on Dr. Denver's report, including his finding that Plaintiff's "cognitive difficulties [were] poorly documented and [were] not supported based upon the available medical evidence that has been provided on this review." (*Id.*, Ex. M [8/24/06 Letter].)

### b.    *The Matter Presently before the Court*

On September 9, 2006, Plaintiff concurrently filed a motion in this court to reopen his case and a motion for partial summary judgment. (Pl.'s Mot. to Reopen Litigation Following Remand [filed Sept. 9, 2006]; Pl.'s Br.) Plaintiff argues that Defendant had the burden to perform the necessary neuropsychological or vocational testing to determine whether Plaintiff could perform his job as a computer software engineer. (*Id.* at 13.) Plaintiff contends that Defendant's denial of benefits from July 1, 2003 forward was arbitrary and capricious because Defendant failed to

submit Plaintiff to neuropsychological and vocational testing.  (*Id*.)  Further, Plaintiff argues that

because he cannot now undergo retrospective testing for the period of July 1, 2003 to the present,

he is entitled to summary judgment on his claim for benefits during that period.  (*Id.*)  Finally,

Plaintiff argues that he is entitled to summary judgment on his claim for benefits for the period of

July 13, 2002 through June 30, 2003.  (*Id.*)  On October 10, 2006, Defendant responded to

Plaintiff's motion for summary judgment.  (Def.'s Resp.)  On October 31, 2006, Plaintiff filed a

reply in support of his summary judgment motion.  (Pl.'s Reply to Motion for Summary Judgment

Following Remand [filed Oct. 31, 2006] [hereinafter "Pl.'s Reply"].)

## ANALYSIS

### 1.    *Standard of Review*

Plaintiff moves for summary judgment under Rule 56.  Pursuant to Rule 56(c) of the

Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and the . . . moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2007); *see Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517

(10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once

the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

genuine issue for trial on a material matter."  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing

*Celotex Corp.*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2007).  The court may only consider admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record must be viewed in the light most favorable to the nonmoving party.  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990]).

It is not entirely clear that a motion for summary judgment is the proper vehicle for the court to use in an ERISA case.  In *Olenhouse v. Commodity Credit Corp.*, the Tenth Circuit held that a district court's judicial review of an agency action should follow appellate rules of procedure as opposed to the federal rules of civil procedure.  42 F.3d 1560, 1579–80 (10th Cir. 1994).  Several courts have held that *Olenhouse*'s rule applies to a review of an administrator's denial of disability benefits in ERISA cases.  *Caldwell v. Life Ins. Co. of N. Am.*, 37 F. Supp. 2d 1254, 1257 (D. Kan. 1998), *rev'd in part on other grounds*, 287 F.3d 1276 (10th Cir. 2002); *Brooks v. Guardian Life Ins. Co. of Am.*, 995 F. Supp. 1174, 1177 (D. Kan. 1998); *Clausen v. Standard Ins. Co.*, 961 F. Supp. 1446, 1455 (D. Colo. 1997).  Nonetheless, most courts, including the Tenth Circuit, apply the summary judgment standard in ERISA cases.  *E.g., Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1002 (10th Cir. 2004) (applying usual *de novo* appellate review of district court's order on summary judgment in an ERISA case); *Kimber v.*

-10-

*Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999) (same).  As the court did before in this case, it assumes without deciding that the summary judgment standard applies, but notes that the point is moot — the court's determination would be the same under either standard.

Courts apply a *de novo* standard of review regarding a plan administrator's denial of benefits unless the benefit plan gives the administrator of the plan discretionary authority to determine an employee's eligibility for benefits or to construe the terms of the plan.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Fought*, 379 F.3d at 1002–03.  Here, the policy gives Defendant discretionary authority "to construe the terms of this policy and to determine benefit eligibility."  (Order at 2.)  Where the plan grants the plan administrator discretionary authority, courts review the plan administrator's decision under an arbitrary and capricious standard.  *Fought*, 379 F.3d at 1003.  Such a review is generally limited to the administrative record.  *Id.*; *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 823–24 (10th Cir. 1996); *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).

The burden under the arbitrary and capricious standard depends upon whether the plan administrator operates under a conflict of interest.  In denial of benefits cases, the plaintiff is required to prove the existence of a conflict of interest.  *Fought*, 379 F.3d at 1005.  The parties have agreed that Defendant has an inherent conflict of interest.  (*See* Order at 10.)  In such circumstances,

> the plan administrator bears the burden of proving the
> reasonableness of its decision pursuant to this court's traditional
> arbitrary and capricious standard.  In such instances, the plan
> administrator must demonstrate that its interpretation of the terms

> of the plan is reasonable and that its application of those terms to
> the claimant is supported by substantial evidence.

*Fought*, 379 F.3d at 1006 (citation omitted). "Substantial evidence is such evidence that a

reasonable mind might accept as adequate to support the conclusion reached by the

[decisionmaker]. Substantial evidence requires more than a scintilla but less than a

preponderance." *Sandoval*, 967 F.2d at 382 (internal quotation marks omitted) (alteration in

original).

**2.      Evaluation of Claims**

As a preliminary matter, the court addresses Plaintiff's motion to reopen this case.

Defendant evidently does not object to the case being reopened. Indeed, Defendant substantively

responded to Plaintiff's motion for summary judgment after reopening. Accordingly, Plaintiff's

motion to reopen is granted.

As to Plaintiff's other motion before the court, Plaintiff asserts that he is entitled to

summary judgment on his claim to entitlement to benefits from July 13, 2002 through June 30,

2003, because Defendant paid benefits for that period. (Pl.'s Br. at 25.) Additionally, Plaintiff

argues he is entitled to summary judgment on his claim for benefits from June 30, 2003 through

the present because Defendant, as an inherently conflicted ERISA administrator, has the burden to

prove its denial of benefits for that period was reasonable. (*Id*. at 14.) Plaintiff argues that this

burden imposed on Defendant a duty to conduct an independent investigation of Plaintiff's claim

and obtain the requisite neuropsychological or vocational testing to establish Plaintiff as unable to

perform his job before denying benefits. (*Id*. at 14–15.) Based on this failure to conduct testing,

-12-

Plaintiff asserts that Defendant's denial was arbitrary and capricious.  (*Id.* at 19.)  Plaintiff argues

further that because neuropsychological and vocational testing cannot be done now to establish

his capacities in July 2003 until the present, remand is futile and judgment should enter in his

favor.  (*Id.* at 25–26.)  I address Plaintiff's arguments as to each period of time below.

      ***a.***       ***July 13, 2002 through June 30, 2003***

It is undisputed that after this court remanded Plaintiff's case, Defendant reinstated and

paid long-term disability benefits totaling $56,421.90 for the period from July 13, 2002 through

June 30, 2003.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 8a, 8d; *admitted at* Def.'s Resp.,

Resp. to Statement of Undisputed Material Facts ¶¶ 8a, 8d.)  Plaintiff baldly asserts that the fact

that Defendant made this payment warrants summary judgment on his claim for benefits pertaining

to this period of time.  (*Id.* at 25.)  Perhaps unsurprisingly, Defendant does not deign to address

Plaintiff's argument.  (*See* Def.'s Resp.)

A brief review of Plaintiff's sprawling claim aids this court's analysis.  Plaintiff's complaint

contains but one claim — for recovery of benefits pursuant to ERISA — but encompasses several

legal theories.  (*See* Compl.)  Plaintiff's claim asserts that Defendant's denial was a breach of its

administrative duties and, by statute, entitles Plaintiff to attorney fees, costs, and expert witness

fees.  (*Id.* ¶¶ 20–21.)  Further, Plaintiff sought as relief judicial declarations of his rights under the

Policy and that Defendant had violated the ERISA statute as well as payment of benefits and

attorney fees and costs with interest.  (*Id.*)

In his motion for summary judgment now before the court, Plaintiff makes no citation to the Policy and makes no mention of the elements necessary to prove a breach or the statutes that purportedly provide for payment of fees and costs. (*See* Pl.'s Br.) This omission effectively seals the fate of Plaintiff's motion. The mere act of Defendant's payment does not provide the court with the factual evidence necessary either: (1) to enter summary judgment on the questions of breach or statutory entitlement to attorney fees; or (2) to interpret the Policy language and declare Plaintiff's rights. Nevertheless, the court does find that Defendant's reinstatement and payment of benefits for the period of July 13, 2002 through June 30, 2003 effectively serve as a confession of Plaintiff's claim that he was entitled to same. Accordingly, Plaintiff's motion for summary judgment is granted as to his claim of entitlement and for a judicial declaration of his entitlement. The motion is denied in all other respects concerning this period of time.

> **b.    July 1, 2003 through the Present**

Plaintiff argues that he is entitled to summary judgment because Defendant's denial of benefits for the period from July 1, 2003 forward was arbitrary and capricious. (*Id*. at 14–24.) Specifically, Plaintiff argues that Defendant did not support its decision with neuropsychological or vocational testing — testing Plaintiff argues Defendant was obligated to require. (*Id.*) Defendant counters that its denial of benefits was supported by substantial evidence. (Def.'s Resp. at 25–28.) Defendant reasons that its decision was justified because in applying for benefits, Plaintiff had an initial burden to establish that he was disabled and failed to furnish physician's opinions or reports to do so. (*Id*. at 12–22.) Further, Defendant argues that it had no

responsibility to prove up Plaintiff's claim by submitting Plaintiff to neuropsychological or vocational testing.  (*Id.* at 22–25.)

Plaintiff would have the court believe that two burdens of proof and the relationship between the two are at the heart of this case.  (Pl.'s Reply at 4.)  The court disagrees.  The sole issue before this court is whether Defendant's denial of benefits was supported by substantial evidence.  The court finds that it was not.  Defendant attempts to justify its denial based on Dr. Denver's findings that: (1) Plaintiff was unable to perform his job and entitled to benefits at least through June 5, 2003; and (2) at some point — ostensibly after June 5, 2003 — it was expected that Plaintiff would develop a tolerance to the narcotic medications he was taking.  (*See* Def.'s Resp. at 18–19.)  Admittedly, though, whether Plaintiff had developed a tolerance sufficient to allow him to perform his job could only be determined by subjecting him to neuropsychological or vocational testing, which was not done.  (*See id.* at 19.)  Without medical evidence to support Defendant's position that as of July 1, 2003, Plaintiff had developed sufficient tolerance to his medications to perform his job, this court can only find that Defendant's denial was arbitrary and capricious.  Defendant's argument that Plaintiff had the burden to furnish such evidence simply does not obtain.  As the Tenth Circuit recently held in *Gaither v. Aetna Life Insurance Co.*:

> If benefits are denied . . . the reason for the denial must be stated in reasonably clear language, . . . [and] if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.  There is nothing extraordinary about this: it's how civilized people communicate with each other regarding important matters.

394 F.3d 792, 807 (10th Cir. 2004) (italics, citations, and internal quotation marks omitted).  The

burden of proof in this case has no effect on the fact that Defendant cannot base its decision on

non-existent evidence.

At this point, the court would normally remand the case without further comment.  In this

case, one additional argument must be addressed.  Plaintiff argues that, rather than an order to

remand, he is entitled to an order requiring Defendant to pay benefits for the period from July 1,

2003 to the present.  (Pl.'s Br. at 25.)  Plaintiff reasons that remanding his case would be futile

because a determination of whether he had developed sufficient tolerance to perform his job after

July 1, 2003 could only be determined by concurrently-performed testing.  (*Id.* at 24–25.)

Plaintiff supports this position by citing Defendant's statement in its August 24, 2006 letter that:

> There was no neuropsychological testing conducted[] at any time[] relevant to
> [Plaintiff's] reports of disabling cognitive impairment.  While neuropsychological
> testing conducted at present would assess [Plaintiff's] current level of functioning,
> it would not be determinative of [Plaintiff's] reported cognitive impairment as of
> 2002–2005.

(*Id.*, Ex. M at 6 [8/24/06 Letter].)  The court cannot agree with Plaintiff's logic.  Neither party in

this case purports to have any medical expertise in neuropsychology.  As such, it would be

reckless for the court to accept either party's representations as to either what could be proven by

performing neuropsychological testing or the time frame for which such testing could be

determinative.  Indeed, it is undisputed that Plaintiff has never been subjected to examination or

testing by neuropsychological experts during the period of time relevant to his claim.  (*See id.*)  It

is well within the realm of possibility that neuropsychological experts could determine whether

-16-

and when Plaintiff developed sufficient tolerance to perform his job.  Indeed, what can or cannot

be determined remains an open question until Plaintiff's case is examined by such experts.

Without any expert input whatsoever, this court is ill-prepared to decide whether payment of

benefits is necessary, proper, or justified.  For these reasons, Plaintiff's case is remanded for

further proceedings.

*3.*      *Conclusion*

      Based on the foregoing it is therefore ORDERED that:

      1.  Plaintiff's motion to reopen (#92) is GRANTED.

      2.  Plaintiff's motion for partial summary judgment (# 93) is GRANTED in part and

DENIED in part.  The motion is GRANTED as to Plaintiff's claim for benefits prior to July 1,

2003 only with respect to his claim of entitlement and for a judicial declaration of his entitlement.

The motion is DENIED in all other respects concerning this period of time.  As to Plaintiff's claim

for benefits after July 1, 2003, the motion is GRANTED in part and DENIED in part.  The

motion is GRANTED as to Plaintiff's request for judicial determination that Defendant's denial of

benefits was arbitrary and capricious.  The motion is DENIED in all other aspects, including

Plaintiff's request for an order that he receive payment of benefits rather than remand.

      3.  This case is REMANDED to Defendant for additional proceedings consistent with this

opinion.  The clerk will close this case in this court.

Dated this 30th day of May, 2007

BY THE COURT:


<u>s/ Edward W. Nottingham</u>
EDWARD W. NOTTINGHAM
United States District Judge